UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MURPHY,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>    Defendant. | No. 1:18-cv-00712-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

### I. **Introduction**

Plaintiff Donna Murphy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 21 and 22. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 12.

1

## II. Procedural Background

On October 2, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning September 19, 2014. AR 46. The Commissioner denied the application initially on October 31, 2014, and upon reconsideration on January 22, 2015. AR 46. On March 17, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 46.

Administrative Law Judge Vincent A. Misenti presided over an administrative hearing on January 26, 2017. AR 56-90. Plaintiff appeared and was represented by an attorney. AR 56. Impartial vocational expert Alina Sala (the "VE") also testified. AR 56. In the course of the hearing, Plaintiff and her attorney amended the disability onset date to December 27, 2015. AR 64.

On April 27, 2017, the ALJ denied Plaintiff's application. AR 46-52. The Appeals Council denied review on March 19, 2018. AR 1-4. On May 23, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony

Plaintiff (born April 12, 1954) lived in an apartment with her husband and adult step-daughter. AR 60, 91. Her husband, a truck driver, was not working following shoulder surgery. AR 60. They supported the household on Plaintiff's social security benefits and unspecified disability assistance paid to her husband. AR 60-61.

Plaintiff stopped working because of her constant back pain, which was aggravated by bending and twisting. AR 65. She relieved the pain with heat and medication (ibuprofen), which reduced her pain to 4-5/10. AR 66, 78. Periodically her doctor administered cortisone injections, which provided pain relief for several weeks. AR 66, 75. After a fall in July 2016, Plaintiff underwent knee surgery to repair a torn meniscus. AR 69. Because her knee was still swollen and painful, Plaintiff used a cane. AR 67. Resting with her feet elevated was helpful. AR 75-76.

Plaintiff completed high school and was able to drive and use the internet. AR 61, 71. She could sit for 40 to 45 minutes at a time, stand for 30 to 35 minutes, walk for about 15 minutes

and lift a ten-pound bag of potatoes. AR 69-70. With her step-daughter's help, Plaintiff performed various household chores such as washing, cooking, mopping, making the beds, sweeping, washing dishes and taking out the trash. AR 70. She stopped for frequent breaks to accommodate her pain. AR 74. She left her home to pay bills and visit her mother. AR 71.

To support her family, Plaintiff returned to work after filing for disability in October 2014, working as a hotel housekeeper and performing unlicensed hair styling services at home. AR 72. She forced herself to work despite her pain, leaving early when necessary. AR 71-72. In particular, Plaintiff had trouble pushing the heavy cart of cleaning supplies. AR 79.

### B. Medical Records

Plaintiff first injured her back at work in 1995. AR 269. On July 17, 2014, Plaintiff reported that her long-term lower back pain had worsened since a part-time job at Macy's required her to lift and hang clothing. AR 258. Maulik Narendra Shah, M.D., examined Plaintiff and found no erythema, warmth, edema or tenderness. AR 258. Sensation was intact and Plaintiff retained full motor strength in all four extremities. AR 259.

On September 18, 2014, Dr. Shah observed lower back tenderness but no erythema, warmth or edema. AR 252. Plaintiff had intact sensation and full motor strength in all four extremities. AR 252. Lumbosacral spine x-rays revealed degenerative changes mostly of the lower lumbar sacral joints, normal alignment and no dynamic instability. AR 248-49.

Plaintiff stopped working before she next saw Dr. Shah on September 22, 2014. AR 270. Dr. Shah noted that Plaintiff was in no acute distress and that her back pain was likely muscular. AR 271. He described the x-rays as "negative" and showing "mild arthritic changes." AR 271.

Dr. Shah referred Plaintiff to physical therapy once weekly for twelve weeks. AR 267-68. On September 24, 2014, physical therapist Scott Haubursin evaluated Plaintiff's range of motion and flexibility, finding "mechanical low back pain with good overall mobility and function." AR 270.

On October 20, 2014, Plaintiff complained of both lower back pain and left knee pain. AR 396-98. Dr. Shah advised Plaintiff to use NSAIDs and physical therapy to address her knee

///

pain and to try Aleve for her back pain. AR 397-98. On October 28, 2014, Plaintiff told Haubursin that her lower back was feeling better. AR 400.

On January 23, 2015, Plaintiff saw Linda Carol Pauls, M.D., following lower left back spasms that traveled up through her back and were not relieved by Aleve. AR 418. After examining Plaintiff, Dr. Pauls noted tenderness in the lower left lumbar area. AR 419. A straight-leg raising test was negative to 90 degrees. AR 419. Plaintiff had normal reflexes and strength in her lower extremities. AR 419. Dr. Paul prescribed Methocarbamol (Robaxin) to be taken as needed for back spasm. AR 420.

On March 29, 2015, Nicole Amelia Calvillo, M.D., characterized Plaintiff's chronic lumbar pain as moderate, non-radiating and consistent. AR 450. Medical and physical therapy provided mild relief. AR 450. Dr. Calvillo directed Plaintiff to discontinue ibuprofen and Aleve, and prescribed Meloxicam (Mobic). AR 451.

Magnetic resonance imaging performed on April 4, 2015, revealed:

> 1. L4-5 mild left eccentric broad-based disc bulge, prominent ligamentum flavum and congenitally short pedicles with mild central canal stenosis. Mild narrowing of the bilateral inferior neural foramen.
>
> 2. Minimal to mild disc bulges at L3-4 and L5-S1 with no significant central canal stenosis. Mild narrowing of the bilateral inferior neural foramen L5-S1.
>
> AR 471.

The report cautioned that the conditions reported were common in persons aged 40 to 60 years whether or not they were experiencing any back pain. AR 471.

On April 30, 2015, Marsa Moody White, M.D., performed a consultative evaluation of Plaintiff's back pain at Dr. Calvillo's request. AR 510-13. Dr. White diagnosed chronic lower back pain and arthropathy of lumbar facet. AR 513. She continued Plaintiff's Mobic prescription, added Tramadol for pain and referred Plaintiff for additional physical therapy. AR 513. Dr. White recommended facet injections if Plaintiff's condition did not improve. AR 513.

On September 25, 2015, Vivian Cayme Torio, O.D., noted little improvement with Tramadol, ibuprofen and physical therapy. AR 529. On November 13, 2015, Dr. White referred

4

Plaintiff for bilateral lumbar facet injections at L4-5 and L5-S1. AR 534. When Plaintiff saw Dr. White on February 16, 2016, she reported diffuse lower back pain and advised the doctor that she had decided not to proceed with lumbar facet injections. AR 570. On April 6, 2016, Plaintiff agreed to a consultation concerning lumbar facet injections after which she would decide whether or not to try them. AR 602-04.

Eugene Huang, M.D. conducted the consultation on June 1, 2016. AR 613. Plaintiff described her pain as constant tingling and cramping which moderately interfered with her usual activities. AR 613. Following a discussion, Dr. Huang administered the injections. AR 615.

On July 20, 2016, Sandip Jitendra Madhav, M.D., examined Plaintiff and observed both right and left antalgic gait and reduced range of motion in flexion, right/left rotation and right/left side bend. AR 672. Extension was normal. AR 672. Plaintiff reported 7/10 pain. AR 671. Dr. Madhav administered a right lumbar facet joint injection. AR 672. On August 4, 2016, Dr. Huang noted that Plaintiff had experienced only ten to fifteen percent relief for "a coup[le] days" after the injection, and questioned whether Plaintiff was a candidate for further injections. AR 719.

On August 12, 2016, Nelson Antonio Rodriguez, M.D., examined Plaintiff's right knee, which had been injured in a fall two weeks earlier. AR 725. Dr. Rodriguez observed tenderness and slight edema. AR 725. X-rays revealed no fracture. AR 725. Dr. Rodriguez provided a knee sleeve and a prescription for acetaminophen with codeine. AR 726.

When Dr. White saw Plaintiff on August 22, 2016, Plaintiff reported constant aching and sharp back pain that did not radiate. AR 740. Magnetic resonance imaging of Plaintiff's right knee revealed a large joint effusion, patellar chondromalacia, and lateral meniscal degeneration and degenerative tearing. AR 746-47. Dr. White noted that the facet injections had reduced Plaintiff's pain by 50 per cent for two weeks. AR 740.

When orthopedist Christian Cameron Safian, M.D., performed a consultative examination of Plaintiff's right knee on August 30, 2016, Plaintiff continued to experience pain and the swelling had not subsided. AR 757. On October 6, 2016, Dr. Safian performed a right knee arthroscopy, partial lateral meniscectomy and chondroplasty patella. AR 820. Although

Plaintiff's knee was stiff on October 19, 2016, Plaintiff was "doing fairly well" and had discontinued using crutches. AR 1027. Dr. Safian removed Plaintiff's stitches and encouraged her to slowly increase activity as tolerated. AR 1028.

On September 4, 2016, a nuclear medicine body scan revealed osteophytes and arthritic changes at L3, L4, L5 and sacrum, and arthritic changes in Plaintiff's legs and feet. AR 774.

**IV.    Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.    The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

6

> An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. **Summary of the ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset date of December 27, 2015. AR 48. Her severe impairments included a right knee meniscus tear and degenerative disc disease of the lumbar spine. AR 48. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 49.

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b); to frequently climb stairs and ramps; never to climb ropes, ladders or scaffolds; and, to stoop, crouch, crawl and kneel. AR 49.

///

///

Plaintiff was able to perform her past relevant work as a Cleaner, Housekeeping. AR 51. Accordingly, the ALJ found that Plaintiff was not disabled from December 27, 2015, through April 27, 2017 (the date of the hearing decision). AR 52.

**VII.   Evaluation of Plaintiff's Alleged Symptoms**

Plaintiff challenges the ALJ's determination that Plaintiff's testimony was not fully credible contending that the determination was not supported by clear and convincing reasoning. Relying on *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), Plaintiff contends that the ALJ did nothing more than parse the agency's boilerplate introductory statement that Plaintiff's testimony was not fully credible without articulating specifically "what testimony is not credible and what evidence undermines the claimant's complaints." *See Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The Commissioner counters that the hearing decision in this case can be distinguished from *Brown-Hunter*, in which the ALJ "did not specifically identify any inconsistencies" but "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *See Brown-Hunter*, 806 F.3d at 494. The Commissioner emphasizes that the ALJ in this case tied his determination that Plaintiff was not fully credible with the summary of the objective medical evidence as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 50.

The Court declines to disturb the agency's determination that Plaintiff's subjective representations of her back and knee pain were inconsistent with objective medical evidence of (1) minimal to mild degenerative disc disease with (2) generally normal functional assessments including multiple negative straight leg raising tests, multiple assessments revealing normal or minimally decreased range of motion of the lumbar spine, normal gait and alignment, and no dynamic instability. *See* AR 50. In reaching this determination the Court focuses primarily on

8

the guide to evaluating symptoms in disability claims, as set forth in S.S.R. 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

To determine whether the ALJ's findings are supported by sufficient evidence a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[A] federal court's review of Social Security determinations is quite limited." *Brown-Hunter*, 806 F.3d at 492 (9th Cir. 2015). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted). Federal courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098).

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

///

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 50. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. "[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence and the same non-medical evidence." S.S.R. 16-3p at 5. In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence, the claimant's representations of the intensity, persistence and limiting effects of her symptoms, statements and other information from medical providers and other third parties and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989)). *See also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the

severity of his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* (internal quotation marks and citations omitted).

However, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly considers whether the objective medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

The ALJ did so here, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." AR 50.

"If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. As long as the agency decision clearly expresses the basis for the agency's decision, a federal court will not reverse simply because the

///

agency decision is explained with "less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492; *Treichler,* 775 F.3d at 1099.

After indicating his conclusion that Plaintiff's testimony was not fully consistent with other evidence in the record, the ALJ reviewed the evidence of Plaintiff's back pain and treatment:

> In terms of the claimant's alleged degenerative disc disease of the lumbar spine, September 2014 x-rays of the claimant's lumbar spine showed degenerative changes, mostly in the lower lumbar facet joints, but normal alignment and no dynamic instability. An April 2015 MRI of her lumbar spine revealed a mild left eccentric broad-based disc bulge at L4-5 with mild central canal stenosis and mild narrowing of the bilateral inferior neural foramen, as well as, minimal to mild disc bulges at L3-4 and L5-S1 without stenosis but with mild narrowing of the bilateral inferior neural foramen at L5-S1. X-rays, completed later that month, showed diffused demineralization of the claimant's lumbosacral spine with lower lumbar facet arthropathy. In November 2015, the claimant was referred for bilateral L4-5 and L5-S1 facet injections. However, in February 2016, her physician, Marsa White, M.D., noted that the claimant had decided not to proceed with the lumbar facet injections. At this time, Dr. White observed that the claimant's gait was normal and straight leg raise tests were negative but she showed decreased range of motion in her lumbar spine and tenderness to palpation. At an April 2016 return visit to Dr. White, the claimant reported diffuse low back pain and agreed to proceed with an informational consultation for lumbar facet injections. Straight leg tests were again negative. On July 20, 2016, the claimant underwent a right lumbar facet joint injection. At an August 2016 follow up appointment, the claimant reported 10-15% pain relief for a few days. Straight leg raises tests were again negative. In September 2016, the claimant underwent a whole body bone scan with [SPECT] based on her history of low lumbar pain. The scan indicated osteophytes/arthritic changes at L3, L4, L5, and sacrum. At an October 2016 visit, Dr. White noted that straight leg raise tests were negative and prescribed 800 mg. of ibuprofen for back pain.

AR 50 (citations to appellate record omitted).[3]

The ALJ also summarized the evidence of Plaintiff knee injury and subsequent surgery, including the assessment that despite some stiffness, Plaintiff was "doing fairly well" two weeks

///

---

[3] "Single photon emission computed tomography (SPECT) is a medical imaging technique that is based on conventional nuclear medicine imaging and tomographic reconstruction methods." Nat'l Research Council (U.S.) and Institute of Medicine (U.S.) Committee on the Mathematics and Physics of Emerging Dynamic Biomedical Imaging, Mathematics and Physics of Emerging Biomedical Imaging (National Academies Press, 1996), ncbi.nlm.nih.gov/books/NBK232492 (recovered August 12, 2019). The instrumentation and technology used in SPECT provides 3D information of the scanned area. *Id.*

12

after surgery and had stopped using crutches. AR 51. Plaintiff was directed to slowly increase activity and begin physical therapy. AR 51.

The ALJ concluded that the medical treatment evidence as a whole indicated a good range of motion and normal gait with minimal to mild lumbar findings. AR 51. The ALJ declined to assess any limitations attributable to Plaintiff's knee surgery, which had been performed less than eight months earlier and from which Plaintiff was still recovering. AR 51.

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." S.S.R. 16-3p at 6. Because objective medical evidence may reveal the intensity, persistence and limiting effects of a claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are consistent with medical signs and laboratory findings of record. *Id.* For example, "reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, pain." *Id.* Conversely, records indicating that a claimant has no muscle wasting bely a claimant's representation that he or she has been unable to walk no more than a few steps per day. *Id.* As the ALJ found in this case, Plaintiff's claims of disabling pain were inconsistent with imaging showing minimal to mild disc degeneration, normal gait and alignment, absence of dynamic instability, and repeatedly normal straight leg raises.

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff would construe the evidence differently than the ALJ. Nonetheless, the hearing decision sets forth sufficient evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully credible. The Court will not second guess the ALJ's assessment of Plaintiff's credibility.

**VIII. Sufficiency of Evidence to Support Residual Functional Capacity Determination**

Plaintiff also contends that the ALJ erred in determining Plaintiff's residual functional capacity in the absence of a medical opinion to support his conclusions. Emphasizing that determining residual functional capacity is a legal decision properly made by an administrative

13

law judge, the Commissioner responds that the ALJ properly determined Plaintiff's residual functional capacity with reference to the record as a whole. The Court agrees that the ALJ properly relied on the existing administrative record to determine Plaintiff's residual functional capacity as follows.

### A. <u>Agency Physicians' Opinions</u>

In remarks dated October 28, 2014, I. Ocrant, M.D., agreed with the observations of an agency analyst that Plaintiff's back pain was unremarkable with mild arthritic changes and was improved with physical therapy and exercises. AR 93. Dr. Ocrant opined that Plaintiff had the residual functional capacity to lift, carry, push and pull fifty pounds occasionally and twenty-five pounds frequently. AR 94. She could sit, stand and walk for six hours in an eight-hour workday. AR 94. Plaintiff could frequently stoop and bend at the waist, and had unlimited ability to climb ramps, stairs, ropes, ladders and scaffolds, and to balance, kneel, crouch, and crawl. AR 95. On reconsideration (January 22, 2015), A. Nasrabadi, M.D., agreed with Dr. Ocrant's assessment. AR 103-04.

No other physicians opined on Plaintiff's residual functional capacity.

### B. <u>Hearing Decision</u>

As summarized above, the ALJ concluded that Plaintiff had the residual functional capacity perform light work as defined in 20 C.F.R. § 404.1567(b); to frequently climb stairs and ramps; never climb ropes, ladders or scaffolds; and, stoop, crouch, crawl and kneel. AR 49. The ALJ gave little weight to the agency physicians' opinions since they did not personally have an opportunity to examine Plaintiff and had issued their opinions before much of the evidence of Plaintiff's medical treatment had been incorporated into the record. AR 51. The ALJ concluded that the agency physicians' "determinations are not consistent with more recent medical evidence of record, which indicate[s] that further restrictions are warranted." AR 51.

The ALJ supported his determination with multiple citations to the record: 4F-65 (MRI report concerning mild disc bulges at L4-5, L3-4, L5-S1 and mild foraminal narrowing at L5-S1 (AR 471)); 4F-107 (x-ray findings of diffuse lumbosacral demineralization, normal spacing and alignment, small endplate marginal osteophytes at lower thoracic spine and lower lumbar facet

arthropathy (AR 513)); 4F128 (Dr. Moody's report diagnosing chronic back pain and arthropathy of lumbar facet, which referred Plaintiff for L4-5 and L5-S1 facet injections (AR 534)); 4F164 (Dr. Moody's report noting tender bilateral lumbar paraspinals, decreased range of motion in standing extension and pain with facet loading (AR 570)); 4F197 (Dr. Moody's report noting chronic axial low back pain and Plaintiff's reconsideration of facet injections and willingness to proceed with consultation for information (AR 603)); 5F20-32 (record of lumbar facet joint injections (AR 663-75)); 5F76 (report that right lumbar medial branch injection provided ten to fifteen percent relief for a couple of days (AR 719)); 5F82-83 (initial diagnosis of knee injury (AR 725-26)); 5F92 (x-ray report showing small joint effusion at knee (AR 735)); 5F98 (Dr. Moody's report of low back and knee pain with referrals for MRI of knee and updated back imaging (AR 741)); 5F104 (MRI report of lateral meniscal degeneration and degenerative tearing (AR 747)); 5F109 (Dr. Moody referral to orthopedist for knee treatment (AR 752)); 5F126-27 (report of full body scan with SPECT reporting various arthritic changes to lower back and lower extremities (AR 769-70)); 5F177 (operative note for right knee arthroscopy, partial lateral meniscectomy and chondromalacia lateral compartment (AR 820)); 6F138-39 (postoperative exam of right knee (AR 1027-28)); and, 6F143 (Dr. White's report of temporary back relief with facet injections and referral for RFA (radio frequency ablation) (AR 1032)).

The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence and longitudinal treatment record. Regarding her degenerative disc disease of the lumbar spine, the treatment notes show a good range of motion and a normal gait, and neurological testing and imaging studies reveal minimal to mild lumbar findings. As for her right knee meniscal tear, she underwent surgery in October 2016 and is set to undergo physical therapy, so it is too early to derive limitations from this condition while she is recovering. Therefore, the above-described residual functional capacity is an accurate reflection of the claimant's abilities and limitations.

AR 51 (citations to record omitted).

### C. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."

SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews*, 53 F.3d at 1039-40.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

### D. The ALJ Was Not Required to Obtain A Medical Opinion to Determine Plaintiff's Residual Functional Capacity

Plaintiff contends that even if the ALJ's decisions was drawn from the record as a whole, the ALJ erred by not securing the opinion of a physician to determine Plaintiff's residual functional capacity. No legal authority required the ALJ to secure an additional opinion.

A claimant generally bears the burden of proving his or her entitlement to disability benefits. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); 20 C.F.R § 404.1512(c). But Social Security hearings are not adversarial proceedings. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Whether or not the claimant is represented by counsel, the ALJ "must inform himself about the facts relevant to his decision." *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1 (1983). "The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). *Accord Tonapetyan*, 242 F.3d at 1150; *Smolen*, 80 F.3d at 1288. Nonetheless, the ALJ's obligation to obtain additional evidence is triggered only when the evidence from the treating medical source is inadequate to determine the claimant's disability. *Thomas*, 278 F.3d at 958; *Tonapetyan*, 242 F.3d at 1150 (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to determine the claimant's disability, he is not required to secure an additional or consultative opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### F. The ALJ Did Not Improperly Rely on His Own Opinion

Plaintiff contends that by not securing a physician's opinion concerning Plaintiff's residual functional capacity, the ALJ improperly relied on his own evaluation of the medical records. An ALJ's determination of a claimant's residual functional capacity through analysis of the medical record is distinguishable from an ALJ's usurping the role of the medical expert.

"[A]n ALJ may not act as his own medical expert as he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Decisions addressing this issue frequently speak of an ALJ's "play[ing] doctor and making [his] own independent medical findings." *See, e.g., Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006). Such cases encompass multiple factual scenarios. *See, e.g. Nguyen*,

172 F.3d at 35 (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ erred in rejecting medical opinion based on the ALJ's belief that claimant's attempts to operate a small business were inconsistent with a diagnosis of major depression); *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) (ALJ's common sense determination of residual functional capacity was not supported by substantial evidence where the largely illegible record revealed little physical impairment and included no functional analysis by a treating or expert physician); *Day v. Weinberger*, 522 F.2d 1154, 1155-56 (9th Cir. 1975) (ALJ rejected opinions of treating physicians in favor of criteria set forth in a leading medical textbook identified by the ALJ in his independent medical research).

Although these cases encompass multiple factual situations in which an ALJ determined a claimant's residual functional capacity based on her own medical evaluation, none of them apply to the ALJ's determination of Plaintiff's residual functional capacity in this case. In this case, the ALJ's analysis began with an assessment of the residual functional capacity determined by the agency physicians, which he found to overstate Plaintiff's capacity when considered with the added information available from medical records summarizing Plaintiff's later diagnosis and treatment.

The ALJ's determination of Plaintiff's residual functional capacity was based on substantial evidence in the record and applicable law. The administrative law judge "is entitled to draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642. Although the ALJ must consider the opinions from medical sources concerning a claimant's impairments or residual functional capacity, the ALJ has the final responsibility for deciding these issues. 20 C.F.R. § 404.1527. The ALJ appropriately determined Plaintiff's residual functional capacity in this case.

///

///

**IX.     Conclusion and Order**

1 | Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Donna Murphy.

IT IS SO ORDERED.

Dated: **August 21, 2019**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE